JUDGMENT
=================================================================

A M E N D E D

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

- - - - - - - - - - - - - -

NO. 99-56917
CT/AG#: CV-91-06804-CBM

SILVER SAGE PARTNERS, LTD.; ROBERT E. FILLET; PAUL SABEN;
RICHARD L. EARLIX; MICHAEL S. LINSK

Plaintiffs - Appellants

v.

CITY OF DESERT HOT SPRINGS; DESERT HOT SPRINGS CITY COUNCIL;
JOHN ISAACS, Mayor; DANIEL BEEN; MIKE SEGRIST; SUE WOOD;
DOES 1-1000

Defendants - Appellees

NO. 99-56919
CT/AG#: CV-91-06804-CBM

SILVER SAGE PARTNERS, LTD.; ROBERT E. FILLET; PAUL SABEN;
RICHARD L. EARLIX; MICHAEL S. LINSK

Plaintiffs - Appellants

v.

CITY OF DESERT HOT SPRINGS; DESERT HOT SPRINGS CITY COUNCIL;
JOHN ISAACS, Mayor; DANIEL BEEN; MIKE SEGRIST; SUE WOOD;
DOES 1-1000

Defendants - Appellees

NO. 99-56920
CT/AG#: CV-91-06804-CBM

SILVER SAGE PARTNERS, LTD.; ROBERT E. FILLET; PAUL SABEN;

RICHARD L. EARLIX; MICHAEL S. LINSK

                Plaintiffs - Appellants

   v.

CITY OF DESERT HOT SPRINGS; DESERT HOT SPRINGS CITY COUNCIL;
JOHN ISAACS, Mayor; DANIEL BEEN; MIKE SEGRIST; SUE WOOD;
DOES 1-1000

                Defendants - Appellees

---------------------

     APPEAL FROM the United States District Court for the
Central District of California, Los Angeles .

     THIS CAUSE came on to be heard on the Transcript of the
Record from the United States District Court for the
Central District of California, Los Angeles
and was duly submitted.

     ON CONSIDERATION WHEREOF, It is now here ordered and
adjudged by this Court, that the judgment of the said
District Court in this cause be, and hereby is   REVERSED & REMANDED.
The district court is allowed to consider Silver Sage's motion for
prejudgment interest.

Filed and entered        June 1, 2001.

A TRUE COPY
ATTEST      AUG 2 1 2003

CATHY CATTERSON
Clerk of Court

by:_____

      Deputy Clerk

This certification does constitute the
mandate of the court.

**FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| SILVER SAGE PARTNERS, LTD., ROBERT E. FILLET, PAUL SABEN, RICHARD L. EARLIX, MICHAEL S. LINSK, Plaintiffs-Appellants, | Nos. 99-56917 99-56919 99-56920 |
| v. | D.C. No. CV-91-06804-CBM |
| CITY OF DESERT HOT SPRINGS, DESERT HOT SPRINGS CITY COUNCIL, JOHN ISAACS, Mayor, DANIEL BEEN, MIKE SEGRIST, SUE WOOD, Defendants-Appellees. | ORDER AND OPINION |

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, District Judge, Presiding

Argued and Submitted
March 5, 2001--Pasadena, California
Opinion Filed May 21, 2001
Opinion Withdrawn June 1, 2001

Opinion Filed June 1, 2001

Before: Procter Hug, Jr. and Betty B. Fletcher,
Circuit Judges, and Susan Y. Illston,* District Judge.

Opinion by Judge B. Fletcher

---

*The Honorable Susan Y. Illston, United States District Judge for the
Northern District of California, sitting by designation.

6765

6766

6767

6768

6769

6770

## COUNSEL

William J. Davis, Min Chang, and Won Chang, Davis &
Company, P.C., Los Angeles, California, for the plaintiffs-
appellants.

Kevin Patrick McVerry, Graves, Roberson & Bourassa, Thou-
sand Oaks, California, for the defendants-appellees.

6771

## ORDER

The opinion filed on May 21, 2001 is withdrawn.

## OPINION

B. FLETCHER, Circuit Judge:

We must decide whether a jury's award of damages in the
amount of $3,040,439 was against the clear weight of the evi-
dence. Because we conclude that it was not, we reverse and
remand with instructions that the jury's verdict be reinstated.
We must also decide whether plaintiffs who have established
a defendant's liability under the Fair Housing Act must dem-
onstrate a reasonable likelihood of future violations of the Act
in order to be entitled to injunctive relief under the Act. We
conclude that they need not and so reverse and remand for
reconsideration.

## BACKGROUND

Silver Sage Partnership, Ltd. (the partnership or Silver
Sage) is a partnership organized to purchase and develop low-
income housing at a mobile home park in the City of Desert
Hot Springs, California (the city). Paul Saben and Richard
Earlix were the partnership's principals. In 1990, the partner-
ship entered into an agreement with Huntington Savings and
Loan to purchase the Silver Sage Mobile Home Park, which
was located in the city.1 The partnership initially sought to
finance the project with bonds to be issued by Riverside
County. Although the county approved a bond resolution for

---

1 Huntington Savings and Loan went into receivership. On June 30,
1991, the Resolution Trust Corporation (RTC) entered into a "purchase
and sale agreement" with the partnership, affirming the original purchase
contract.

6772

that purpose, it required the consent of the city, which the city
would not give.

The partnership next tried to obtain financing from the state
of California, believing that state financing would not require
city approval. Because it planned to develop low-income
housing, the California Tax Credit Allocation Committee
agreed to provide the partnership tax credits in the amount of
$8,248,370. For the same reason, the partnership was able to
obtain a commitment for a favorable fifty-five year mortgage
in the amount of $4,233,265 from the California Housing
Department (CHD) under its Rental Housing Construction
Program (RHCP). The involvement of CHD triggered the
application of Article XXXIV of California's Constitution.
That provision requires local voter approval of any low-rent
housing projects that are "developed, constructed, or
acquired" by a "state public body." CAL . CONST. art. XXXIV,
§ 1. On December 18, 1990, the city council voted to deny
Article XXXIV approval to the partnership's development.2

After further attempts to persuade the city to change its
mind failed, plaintiffs brought suit under 42 U.S.C.§ 3613(a),
alleging a violation of section 3604 of the Fair Housing Act.3

---

2 Prior to bringing suit in federal court, the partnership sought a "writ of
mandate," in state court to compel the city to grant approval under Article
XXXIV. The state trial court denied issuance of the writ and the partner-
ship appealed. While plaintiffs' federal case was pending, the California
Court of Appeal held in an unpublished opinion that"the power to

approve or disapprove low-rent housing projects under article XXXIV is reserved for the voters in the community and cannot be delegated to the city council." However, the partnership could not take advantage of the ruling by seeking a referendum on its project because by the time the court of appeals ruled, the RHCP program had exhausted its funds.

3 In addition to the city, plaintiffs also sued the City Council for the City of Desert Hot Springs as well as many persons in their official and individual capacity. By the time of trial, the district court had either dismissed or summarily adjudicated all claims against the individual defendants. Plaintiffs do not appeal from those decisions. Plaintiffs also brought various state law claims and a claim under 42 U.S.C.§ 1983. The district court either dismissed or summarily adjudicated these claims. Plaintiffs do not appeal those decisions.

6773

After trial, the jury found for plaintiffs by general verdict and awarded them damages in the amount of $3,040,439. The city filed a motion for judgment as a matter of law or, in the alternative, a new trial. The district court denied the motion for a judgment as a matter of law and denied the motion for a new trial as to liability. However, because it found the jury's verdict "grossly excessive," the district court denied the city's motion for a new trial on the issue of damages conditional on plaintiffs' acceptance of a remittitur to $388,146.20.

Plaintiffs rejected the remittitur and a second trial on damages was held. After trial, the second jury awarded nominal damages for plaintiffs. After entry of judgment, plaintiffs filed a motion seeking to have the district court "amend" the second jury's damage award or, in the alternative, for a new trial as to damages. Plaintiffs also sought an injunction ordering the city to cease violating the Fair Housing Act. The district court denied both motions. However, the district court did grant plaintiffs' motion to reconsider its previous denial of attorney's fees. The district court decided that since plaintiffs had established the city's liability but had only obtained nominal damages from the jury, it would award plaintiffs $57,000 in attorney's fees.

Plaintiffs now appeal (1) the district court's order granting a new trial on damages because of plaintiffs' refusal to accept the remittitur, (2) the district court's denial of their motion to amend the second jury verdict or order a new trial on damages, (3) the district court's denial of injunctive relief, and (4) the amount of the district court's award of attorney's fees.4 We have jurisdiction under 28 U.S.C. § 1291.

4 The city initially appealed the district court's award of attorney's fees, but it has abandoned its appeal.

6774

## DISCUSSION

### A. Remittitur/New Trial

#### i. Standard of Review

We review a district court's grant of a new trial for an abuse of discretion. <u>United States v. 4.0 Acres of Land</u>, 175 F.3d 1133, 1139 (9th Cir. 1999). We conclude that the same standard of review is appropriate here, where a plaintiff rejects the remittitur and a second trial is held, for the outcome is the same in both cases--the district court overrides the jury's verdict. <u>Cf. Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.</u>, 492 U.S. 257, 279 (1989) (holding that court of appeals should review for an abuse of discretion district court's denial of new trial for punitive damages conditional on plaintiff's acceptance of remittitur).

Under the abuse of discretion standard, even if substantial evidence supports the jury's verdict, a trial court may grant a new trial if "the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." <u>4.0 Acres of Land</u>, 175 F.3d at 1139 (internal quotation marks and citation omitted). We will uphold a district court's grant of a new trial if any of its grounds for granting the new trial are reasonable. <u>Id</u>. However, a district court may not grant a new trial simply because it would have arrived at a different verdict. <u>Id</u>. Thus if the jury's verdict is not against the clear weight of the evidence, we may find that a district court abused its discretion in granting a new trial. <u>Id</u>.

The proper interpretation of a federal statute is a question of law that we review de novo. <u>U.S. v. Stephens</u>, 237 F.3d 1031, 1033 (9th Cir. 2001).

#### ii. Analysis

The jury granted plaintiffs an award of $3,040,439 in damages. The jury's award was not against the clear weight of the

6775

evidence. The district court therefore abused its discretion in
requiring plaintiffs to choose between a new trial and a remit-
titur.

Plaintiffs' damages expert (the expert) testified that the
city's failure to approve the project cost plaintiffs $4,587,679
in damages. The district court found that some of the losses
considered by the expert in calculating plaintiffs' damages (a)
included lost profits which were too speculative, (b) failed to
account for anticipated costs and an anticipated return, (c)
included losses to individuals who were only marginally
affected by the city's discriminatory practices, (d) included
losses due to a purely speculative tax increase and (e) double
counted the partnership's losses. Deducting these losses from
the expert's total, the court concluded that the most that plain-
tiffs could claim was $1,847,067.20. However, the district
court found that even an award in this amount would be
"grossly excessive," because Silver Sage failed to mitigate its
damages. Relying on a feasibility study Saben conducted in
September 1989 for Huntington Savings and Loan, then the
owner of the Silver Sage Mobile Home Park, the district court
concluded that the partnership could have developed the proj-
ect "as a market rate mobile home park and sold[it] for
$1,458,918 after rent up." Deducting this from the amount it
determined was the maximum losses Silver Sage suffered, the
district court concluded that the city was liable for no more
than $388,146.20. The district court denied the city's motion
for a new trial on damages, conditional on plaintiffs' accep-
tance of a remittitur to $388,146.20. Plaintiffs argue that the
district court's order was an abuse of its discretion. Plaintiffs'
argument has merit.

### a. "Speculative" Lost Profits

The district court objected to various alleged losses because
it found them "too speculative." The court stated that the
expert testified that project income "must be used first for
operating expenses, then to pay the management fee, then to

6776

pay interest on the loan from the State of California, then to
pay principal on that loan and only then would Silver Sage
partners receive any remaining profit." The court also claimed
that the expert testified that his calculation of damages
assumed that Silver Sage would pay its loan obligation in full

each year for fifty-five years. In addition, according to the court, Saben, one of the project's developers, testified both in court and before the city council that "he did not consider the loan from the State of California an obligation that had to be repaid [and that] the Silver Sage partnership's projected income stream would never be sufficient to pay much if any of the principal or interest on that loan." The court characterized Saben's testimony as uncontroverted by any other evidence presented at trial. Because it found that the evidence showed that neither the principal nor the interest on the loan would be paid off and that the partnership could receive profit only after the loan was paid, the district court concluded that the expert's projected profits were too speculative. It therefore deducted them from the jury's award in calculating the value of the remittitur.

Plaintiffs dispute the district court's characterization of the evidence. They are right to do so. The district court mischaracterizes the expert's and Saben's testimony. The district court was correct to note that the expert's damages calculations assumed payment on the loan each year. However, the court claimed that Saben testified that the project's projected income stream "would never be sufficient to pay much if any of the principal or interest on the loan." In support of this claim, the court cites Saben's comments to the city council and his trial testimony. While Saben did express some doubts before the city council about Silver Sage's ability to make payments on the loan,[5] his trial testimony is consistent with

---

5 Saben testified as follows concerning his comments before the city council:

> Q [by defense counsel]: Sir, isn't it true that you told the City Council that your calculations showed there is no way that-- because of the low rents--there is no way that there's going to be very much payment made on those loans?
> A [by Saben]: I did say that.

6777

the expert's assumption that the partnership would make payments on the loan each year. After establishing that Saben had made projections concerning loan repayments, plaintiffs' counsel asked Saben what the projections showed. Saben replied: "Projections showed, by the end of the fifteenth year, the payment on the loan would have just about reached the amount of the annual interest, and subsequently, there would have been some principal payments, beginning in the years

after the fifteenth."6 This testimony in no way supports the
district court's claim that Saben testified that project income
"would never be sufficient to pay much if any of the principal
or interest on the loan."7

---

6 Saben's projections are in some ways more optimistic than the
expert's, since the expert did not anticipate payment on the principal until
the thirty-third year of operation. It is unclear to what extent Saben's pro-
jections and the expert's calculations would lead to different assessments
of Silver Sage's lost profits. However, the mere fact that different assess-
ments are possible is not a reason for excluding the lost profits as "too
speculative." See Samaritan Inns, Inc. v. District of Columbia, 114 F.3d
1227, 1235 (D.C. Cir. 1997) (stating that, in action under the Fair Housing
Act, "while a plaintiff seeking to recover lost profits must ordinarily prove
the fact of injury with reasonable certainty, proof of the amount of dam-
ages may be based on a reasonable estimate"); see also Story Parchment
Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563 (1931) ("Where
the tort itself is of such a nature as to preclude the ascertainment of the
amount of damages with certainty, it would be a perversion of fundamen-
tal principles of justice to deny all relief to the injured person, and thereby
relieve the wrongdoer from making any amend for his acts. In such case,
while the damages may not be determined by mere speculation or guess,
it will be enough if the evidence show the extent of the damages as a mat-
ter of just and reasonable inference, although the result be only approxi-
mate.").

7 It is true, as the district court suggests, that Saben testified that the part-
nership did not have a legal obligation to pay back the loan. Saben testi-
fied, for example, that "[t]here were no requirements of any payments of
the principal or interest be made for fifty-five years. No foreclosure for
nonpayment of either principal or interest." However, this statement is not
evidence that Silver Sage would not have made payments on the loan. If,
as the expert testified and stated in his report, the partnership could realize
profits in any year only after paying off the interest accrued through that

6778

The district court also claimed that the expert testified that
the partners would receive profits only after "payment in full
of interest and principal." The district court cites to two pas-
sages from the expert's testimony to support its claim. The
first passage directly conflicts with the court's characteriza-
tion. In it, the expert states that in any year in which operating
income exceeds operating expenses--including the debt ser-
vice due that year--some of the excess income would go to
the partnership.8 This testimony is fully consistent with the
expert's report, which was introduced into evidence, which
states that, pursuant to state regulations, the partnership would

receive some profits in any year that operating income
exceeds payment on the loan, including payment for any
accrued interest balance. The second passage the district court
cites merely confirms that if the partnership failed to make
payments on its loan, its profits would be reduced. **9**

---

year, see infra, then the partnership would be motivated to make payments
whether or not it was legally obligated to do so. In any case, Saben's testi-
mony that the partnership was not obligated to pay off the loan is not
inconsistent with his testimony concerning his projections for loan repay-
ments.

**8** The expert testified:

> The arrangement with the state had a provision that, after the
> operating expenses, which include the, if you will, management
> fee from the partnership to run the facility, and after the debt ser-
> vice, principal and interest payments per the 55-year schedule
> were paid. If there were remaining funds, those funds would be
> available to the partnership.

(emphasis added).

**9** Defense counsel asked the expert to review the minutes of the Decem-
ber 18, 1990 city council meeting. The following colloquy ensued:

> Q [by defense counsel]: . . . [D]o you see where Mr. Saben has
> indicated to the council that there would be no way, that because
> of the low rents, that there is going to be, very much, payments
> made on these loans; there will be some payments made. Do you
> see that?

6779

No evidence supports the district court's finding that the
partnership would realize profits only after the entire loan
obligation was repaid. While Saben's comments before the
city council would appear to indicate a concern about whether
the project would be able to pay its loan obligations, Saben's
trial testimony is fully consistent with the expert's assumption
that the project would make annual mortgage payments. We
therefore conclude that a jury verdict that included damages
for lost profits based on the expert's calculations would not be
against the clear weight of the evidence and that the district
court's exclusion of these damages was an abuse of discre-
tion.

b. "Anticipated" Costs and Return

The district court also faulted the expert's calculation of
Silver Sage's lost profits because it failed to take into account
certain costs which, the court claimed, the partnership "would
have been obligated to pay" had the project gone forward.
The court stated that Silver Sage "promised to pay $125,000
for state-mandated child care facilities" and "to pay an addi-
tional $258,000 for temporary classrooms." The court there-
fore deducted these amounts from the jury verdict in
calculating the remittitur amount. In support of this finding,
the district court cited a memorandum written by Saben and
Earlix. The memorandum clearly expresses Silver Sage's plan
to create a child care facility. However, there is no evidence
that this expression of intention created a binding obligation
on the partnership. Nor does the city point to any evidence in

---

> . . . .
>
> A [by the expert]: I do . . . .
>
> Q: . . . [I]f the loans are not paid back, do you agree that the sale
> proceeds that would go to the Silver Sage Partners would be
> reduced?
>
> A: Yes.
>
> 6780

the record that the creation of a child care facility is mandated
by state law. Similarly, the city fails to identify any evidence
that the partnership was legally obligated to pay anything for
the creation of temporary classrooms.

Because no evidence supports the district court's find-
ing that Silver Sage would have been obligated to pay for the
child care facilities and for the temporary classrooms had the
project gone forward, a jury verdict that did not exclude these
amounts would not be against the clear weight of the evi-
dence. The district court's exclusion of these amounts was an
abuse of discretion.

The district court also objected to the expert's calculation
of the partnership's out-of-pocket expenses. Among those
expenses, the expert counted $34,991 in an escrow account
held by the RTC. The escrow account contained earnest
money for the purchase of the project. The court noted that
the expert included the amount in escrow in the event that
none of it was returned by the RTC and that the expert testi-

fied that he had no information as to whether the RTC would
return it. Because "no evidence indicated that[the RTC]
would not" return the escrow funds, the court concluded that
the possibility that the RTC would not return the funds was
"too speculative to be included in the Partnership's damages."
The court therefore excluded the escrow funds from its remit-
titur calculations.

However, as Silver Sage points out, the purchase and
sale agreement--which was entered into evidence--explicitly
states that the funds in the escrow account "were to be treated
as liquidated damages and forfeited to Seller if the transaction
was not consummated,"**10** A jury damages award that included
the $34,991 in the RTC escrow account is not against the
clear weight of the evidence. We therefore hold that the dis-

---

**10** Plaintiffs also correctly note that Saben testified that the RTC did not
return the earnest money to them.

6781

trict court abused its discretion in excluding this amount in its
remittitur calculations.

### c. "Marginally Affected" Individuals

The district court objected to the inclusion as part of plain-
tiffs' damages of a commission that would have been payable
to Michael Linsk, a real estate broker, had the purchase of the
project gone through, and to a syndication fee that would have
been payable to Robert Fillet. The court held that the Fair
Housing Act "does not entitle all persons however marginally
affected by discriminatory practices to recover for all attenu-
ated harm suffered." It concluded that the harms suffered by
Linsk and Fillet were too attenuated.**11**  The court thus
excluded both Linsk's commission and Fillet's syndication
fee from the damages that plaintiffs could recover.

Plaintiffs argue that the district court improperly nar-
rowed the remedies available under the Fair Housing Act. We
agree. In San Pedro Hotel Co. v. City of Los Angeles, 159
F.3d 470 (9th Cir. 1998), we noted that

> [t]he Supreme Court has long held that claims
> brought under the [Fair Housing] Act are to be
> judged under a very liberal standing requirement. . . .
> [T]he sole requirement for standing under the Act is

the Article III minima of injury in fact. To meet this
requirement, a plaintiff need only allege that as a

---

**11** The district court questioned "whether Linsk has standing to maintain
this suit" but did not rule on the issue. A party's standing is a condition
of our subject matter jurisdiction. Friends of the Earth, Inc. v. Laidlaw
Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180 (2000) (stating that standing
is a jurisdictional requirement of Article III). We therefore address the
issue and conclude, as discussed below, that Linsk does have standing to
bring a claim under the Fair Housing Act. See Hernandez v. Campbell,
204 F.3d 861, 865 (9th Cir. 2000) ("Federal courts are always under an
independent obligation to examine their own jurisdiction." (internal quota-
tion marks and citation omitted)).

6782

result of the defendant's discriminatory conduct he
has suffered a distinct and palpable injury. [Thus,
u]nder the Act, any person harmed by discrimina-
tion, whether or not the target of discrimination, can
sue to recover for his or her own injury. This is true,
for example, even where no housing has actually
been denied to persons protected under the Act.

159 F.3d at 475 (internal quotation marks, citations, and
brackets omitted). The district court did not find that Linsk
and Fillet had not lost their respective commission and syndi-
cation fee because of the city's discrimination. Rather, it held
only that their injuries are too attenuated to merit recovery.
Linsk and Fillet adequately plead injury in fact as a result of
the city's discriminatory action. The jury found that the city
had violated the Fair Housing Act and awarded plaintiffs
damages. Linsk and Fillet therefore had a right under the Act
to recover for their injuries. Cf. Crumble v. Blumthal, 549
F.2d 462, 465, 468-69 (7th Cir. 1977) (holding that district
court abused its discretion in denying real estate brokers'
motion to intervene in case brought under the Fair Housing
Act, where brokers alleged that defendant-sellers promised to
pay commission on sale, but where sellers refused to perform
on their contract to sell because of the buyer's race).

In excluding Linsk's commission and Fillet's syndica-
tion fee from the damages plaintiffs could claim, the court
committed legal error.

### d. Loss from Potential Tax Increase

At the time the expert calculated plaintiffs' damages, it was predicted that then-President-elect Clinton would propose an increase in the highest marginal tax rate from thirty-one to thirty-six percent and would propose a ten percent surcharge on incomes exceeding one million dollars. The expert concluded that the developer and syndicator fees that some of the plaintiffs were seeking as damages would be subject to the

6783

expected tax increase. Had the city not stopped the project, the fees would have been subject to the lower marginal tax. The expert calculated the taxes that the plaintiffs would have to pay on the fees under the proposed changes and included as damages the difference between this and the amount that would be owed under the current tax scheme.

The court excluded the tax damages in part because the loss was too speculative. The district court was correct to exclude the tax damages for this reason. At the time the expert prepared his damages calculations, it was merely speculative whether the tax rate would be changed in the manner he assumed. Although compensatory damages need not be determined with certainty, they may not be based upon "mere speculation or guess." Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563 (1931).

The district court did not abuse its discretion in excluding the damages for increase in tax from its calculation of the damage award to which plaintiffs were entitled.

### e. Mitigation

After the various adjustments, the district court calculated that the maximum amount of damages that plaintiffs could have claimed was $1,847,067.20. Relying on Herrington v. County of Sonoma, 834 F.2d 1488 (9th Cir. 1988), the court concluded that an award of even this much would be grossly excessive because Silver Sage had not attempted to mitigate its damages.

Specifically, the court found that in September 1989, Saben conducted a feasibility study in which he concluded that the project "could be developed as a market rate mobile home park and sold for $1,458,918 after rent up." [12] Because the

---

[12] Saben conducted the 1989 study for Huntington Savings and Loan, at

the time the owner of the Silver Sage Mobile Home Park.

6784

partnership failed to purchase the property and develop it as
a market rate mobile home park, the district court concluded
that it failed properly to mitigate its damages. It therefore
deducted $1,458,918 from $1,847,067.20, the maximum it
had previously concluded plaintiffs could claim, and held that
the city was liable for no more than $388,146.20.

In Herrington, plaintiffs brought a § 1983 action in which
the county rejected the plaintiff-landowners' subdivision
application and subsequently "downzoned" the area in which
the plaintiffs' land was located. The district court granted
injunctive relief and the jury awarded 2.5 million dollars in
damages. Id. at 1490-91. We vacated the damages award, in
part, because we concluded that the award compensated the
plaintiffs for a complete deprivation of the development
potential of their property. However, because the court
declared the county's decision invalid, the plaintiffs regained
the ability to develop their property. Thus, we concluded that
because the award was based on an assumption that the plain-
tiffs suffered a complete deprivation of development rights, it
was excessive. Id. at 1503-06.

Plaintiffs argue that Herrington has no application to their
case because, unlike the plaintiffs in Herrington, they do not
own the property at issue. The district court recognized that
the partnership did not own the property. Nonetheless, it con-
cluded that because there was evidence that the partnership
could still purchase and develop the property as a "market
rate" enterprise, it had a duty to do so. The court provided no
legal authority to support the proposition that a party harmed
by another's violation of the Fair Housing Act has a duty to
mitigate its damages.

Assuming without deciding that Fair Housing plaintiffs
such as the partnership have a duty to mitigate damages, that
duty requires the plaintiff to do no more than is reasonable to
avoid damages. See RESTATEMENT (SECOND) OF TORTS: AVOID-

6785

ABLE CONSEQUENCES§ 918(1).**13** The partnershipplanned to
purchase the mobile home park by using a combination of
state tax credits and a favorable mortgage from the RHCP.
The partnership was able to obtain the RHCP mortgage

because it was going to develop the project as low- and very low-income housing. When the city denied approval, the partnership no longer had access to the RHCP loan.14 Even if we ignore the fact that by the time the city disapproved of the project, the partnership was having financial difficulties, it is simply not reasonable to expect the partnership to have mitigated damages by purchasing the property without the benefit of the favorable RHCP mortgage. Indeed, there is absolutely no evidence in the record that the partnership had available any other source of financing for purchasing the project.

Herrington has no bearing on this case. Even assuming that the partnership had a duty to mitigate its damages, purchasing the mobile home park without the benefit of the RHCP mortgage was not a reasonable option. The district court abused its discretion in excluding the $1,458,918 from the damages plaintiffs could have claimed.

---

**13** Section 918 states

> (1) Except as stated in Subsection (2), one injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort.

> (2) One is not prevented from recovering damages for a particular harm resulting from a tort if the tortfeasor intended the harm or was aware of it and was recklessly disregardful of it, unless the injured person with knowledge of the danger of the harm intentionally or heedlessly failed to protect his own interests.

RESTATEMENT (SECOND) TORTS § 918 (emphasis added).
**14** The district court states that Saben testified that the partnership "did not pursue any other options because the Rental Housing Construction Program had decided--before the City Council had denied . . . approval-- not to provide funds to the project." This mischaracterizes Saben's testimony.

6786

* * *

We have concluded that the district court was correct to exclude the $118,982 potential loss from the predicted tax increase as too speculative, but that the court either abused its discretion or committed an error of law in excluding the other claimed damages. What remains is the district court's exclu-

sion of a loss the court characterized as "double counting." We need not determine whether the district court was correct to exclude this loss because, even excluding this amount, the amount of damages that the evidence would support ($3,164,840) is more than the amount the jury awarded plaintiffs ($3,040,439). We therefore reverse the district court's grant of defendant's motion for a new trial because of plaintiffs' refusal to accept a remittitur to $388,146.20 and remand with instructions to reinstate the verdict awarding damages in the amount of $3,040,439 to plaintiffs by the jury in the first trial. See 4.0 Acres of Land, 175 F.3d at 1143 ("The jury award was not outside the range of evidence presented and a new trial should not have been granted.") (reinstating original jury verdict).

**B. Attorney's Fees**

42 U.S.C. § 3613(c)(2) provides that in an action brought under § 3613(a), a district court "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee and costs." After the second trial, the district court granted plaintiffs attorney's fees in the amount of $57,000. Analyzing plaintiffs' motion for attorney's fees under 42 U.S.C.§ 1988, the court concluded that because they established the city's liability, they were "prevailing parties" within the meaning of the act and so eligible for attorney's fees.**15**  However, because

---

**15** The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, provides that plaintiffs who successfully bring actions under certain civil rights acts are eligible for attorney's fees. Although the language of § 1988 and that of § 3613(c)(2) are almost identical, the court should

6787

plaintiffs only won nominal damages in the second trial, the court limited its award of attorney's fees to compensation "for a reasonable amount of time spent in obtaining a favorable verdict on the issue of liability." Plaintiffs appeal from the district court's award of attorney's fees, arguing that, should we reinstate the first jury's verdict, the fee award should be based on the first jury's damages award.

Because we reinstate the first jury's verdict, we vacate the district court's award of attorney's fees and remand with instructions that the district court should reconsider what constitutes "reasonable attorney's fee[s]" in this litigation, in light of the first jury's award. 42 U.S.C. § 3613(c)(2). The district

court should also consider the time and effort expended on the
second trial and attendant motions.

## C. Remaining Issues

Because we reinstate the original jury verdict, it is unneces-
sary for us to consider any of plaintiffs' remaining claims,
except one. After the end of the second trial, plaintiffs
requested an injunction under § 3613(c)(1) enjoining the city
from further violation of the Fair Housing Act or, in the alter-
native, an evidentiary hearing to determine the scope of nec-
essary remedial measures.16 The district court held that to

---

have analyzed plaintiffs' motion for attorney's fees under § 3613(c)(2)
because that is the statute providing for such awards in cases brought
under § 3613(a) and because the Fair Housing Act is not among the civil
rights statutes enumerated in § 1988. However, the district court properly
could have relied upon cases interpreting § 1988 since "fee-shifting stat-
utes' similar language is a strong indication that they are to be interpreted
alike." Indep. Fed'n of Flight Attendants v. Zipes, 491 U.S. 754, 758 n.2
(1989) (internal quotation marks and citation omitted); see also 42 U.S.C.
§ 3602(o) (" `Prevailing party' has the same meaning as such term has in
section 1988 of this title.").

16 Section 3613(c)(1) states that if a district court "finds that a discrimi-
natory housing practice has occurred or is about to occur, the court may
. . . grant as relief, as the court deems appropriate, any permanent or tem-
porary injunction, temporary restraining order, or other order (including an
order enjoining the defendant from engaging in such practice or ordering
such affirmative action as may be appropriate)."

6788

obtain injunctive relief, plaintiffs "must show reasonable like-
lihood of future violations of the Fair Housing Acts." Finding
that plaintiffs provided no evidence that the city was reason-
ably likely to violate the Fair Housing Act in the future, the
district court denied plaintiff's motion.

i. Standard of Review

We review a district court's decision concerning a perma-
nent injunction for an abuse of discretion, but we review any
determination that underlies the court's decision by the stan-
dard that applies to that decision. Dare v. California, 191 F.3d
1167, 1170 (9th Cir. 1999). Whether a plaintiff must show
evidence that a defendant is reasonably likely to violate the
Fair Housing Act in order to obtain an injunction under

§ 3613(c)(1) is a question of law. We review questions of law de novo. <u>Torres-Lopez v. May</u>, 111 F.3d 633, 638 (9th Cir. 1997).

<u>ii. Analysis</u>

Plaintiffs argue that in holding that the they must establish a reasonable likelihood that the city would continue to violate the Fair Housing Act, the district court reversed the burden of persuasion. They contend that since they have established that the city has violated the Fair Housing Act, future violation should be presumed. Plaintiffs' argument has merit. We have held that where a defendant has violated a civil rights statute, we will presume that the plaintiff has suffered irreparable injury from the fact of the defendant's violation. <u>Smallwood v. Nat'l Can Co.</u>, 583 F.2d 419, 420 (9th Cir. 1978) (discussing Title VII); <u>see also Burlington N. R.R. Co. v. Dep't of Revenue</u>, 934 F.2d 1064, 1074 (9th Cir. 1991) ("The standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief." (internal quotation marks and citation omitted)); <u>Gresham v. Windrush Partners, Ltd.</u>, 730 F.2d 1417, 1423

6789

(11th Cir. 1984) (stating that "irreparable injury may be presumed from the fact of discrimination and violations of fair housing statutes"). The jury returned a verdict in favor of plaintiffs, finding that the city had violated the Fair Housing Act. The city does not contest its liability. We therefore vacate the district court's order denying plaintiffs' motion for an injunction and remand for reconsideration.

**CONCLUSION**

Because the district court abused its discretion and committed legal error in imposing a choice on plaintiffs to accept a remittitur or face a new trial on damages, we reverse the district court's order and remand with instructions to reinstate the first jury's verdict. Because the district court improperly shifted the burden to the plaintiffs to demonstrate irreparable injury, we vacate the district court's order denying plaintiffs' motion for an injunction and remand for reconsideration.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

A TRUE COPY
ATTEST                          AUG 2 1 2003

CATHY CATTERSON
Clerk of Court

by:

Deputy Clerk

This certification does constitute the mandate of the court.

INTERNAL USE ONLY: Proceedings include all events.
99-56917 Silver Sage Partners, et al v. City of Desert Hot S, et al

SILVER SAGE PARTNERS, LTD.            William J. Davis, Esq.
        Plaintiff - Appellant        FAX 253-9939
                                      (213) 253-5939
                                      Suite 4070
                                      [COR LD NTC ret]
                                      DAVIS & COMPANY, P.C.
                                      333 South Grand Avenue
                                      Los Angeles, CA 90071-1544

ROBERT E. FILLET                      William J. Davis, Esq.
        Plaintiff - Appellant        (See above)
                                      [COR LD NTC ret]

PAUL SABEN                            William J. Davis, Esq.
        Plaintiff - Appellant        (See above)
                                      [COR LD NTC ret]

RICHARD L. EARLIX                     William J. Davis, Esq.
        Plaintiff - Appellant        (See above)
                                      [COR LD NTC ret]

MICHAEL S. LINSK                      William J. Davis, Esq.
        Plaintiff - Appellant        (See above)
                                      [COR LD NTC ret]


        v.

CITY OF DESERT HOT SPRINGS            Kevin P. McVerry, Esq.
        Defendant - Appellee         818/707-1333
                                      [COR LD NTC ret]
                                      GRAVES, ROBERSON & BOURASSA
                                      1200 W. Hillcrest
                                      Suite 100
                                       Thousand Oaks, CA 91320-2734
                                      818/707-1333

DESERT HOT SPRINGS CITY               Kevin P. McVerry, Esq.
COUNCIL                               (See above)
        Defendant - Appellee         [COR LD NTC ret]

JOHN ISAACS, Mayor                    Kevin P. McVerry, Esq.
        Defendant - Appellee         (See above)
                                      [COR LD NTC ret]

DANIEL BEEN                           Kevin P. McVerry, Esq.
        Defendant - Appellee         (See above)
                                      [COR LD NTC ret]

MIKE SEGRIST                          Kevin P. McVerry, Esq.
        Defendant - Appellee         (See above)
                                      [COR LD NTC ret]

SUE WOOD                              Kevin P. McVerry, Esq.

AP.COM CLOSED
i

INTERNAL USE ONLY: Proceedings include all events.
99-56917 Silver Sage Partners, et al v. City of Desert Hot S, et al

     Defendant - Appellee            (See above)
                                     [COR LD NTC ret]


DOES 1-1000
     Defendant - Appellee

MOATT INVATT
CLOSED
i

INTERNAL USE ONLY: Proceedings include all events.
99-56919 Silver Sage Partners, et al v. City of Desert Hot S, et al

SILVER SAGE PARTNERS, LTD.          William J. Davis, Esq.
      Plaintiff - Appellant        FAX 253-9939
                                    (213) 253-5939
                                    Suite 4070
                                    [COR LD NTC ret]
                                    DAVIS & COMPANY, P.C.
                                    333 South Grand Avenue
                                    Los Angeles, CA 90071-1544

ROBERT E. FILLET                    William J. Davis, Esq.
      Plaintiff - Appellant        (See above)
                                    [COR LD NTC ret]

PAUL SABEN                          William J. Davis, Esq.
      Plaintiff - Appellant        (See above)
                                    [COR LD NTC ret]

RICHARD L. EARLIX                   William J. Davis, Esq.
      Plaintiff - Appellant        (See above)
                                    [COR LD NTC ret]

MICHAEL S. LINSK                    William J. Davis, Esq.
      Plaintiff - Appellant        (See above)
                                    [COR LD NTC ret]


      v.

CITY OF DESERT HOT SPRINGS          Kevin P. McVerry, Esq.
      Defendant - Appellee         818/707-1333
                                    [COR LD NTC ret]
                                    GRAVES, ROBERSON & BOURASSA
                                    1200 W. Hillcrest
                                    Suite 100
                                     Thousand Oaks, CA 91320-2734
                                    818/707-1333

DESERT HOT SPRINGS CITY       ,     Kevin P. McVerry, Esq.
COUNCIL                             (See above)
      Defendant - Appellee         [COR LD NTC ret]

JOHN ISAACS, Mayor                  Kevin P. McVerry, Esq.
      Defendant - Appellee         (See above)
                                    [COR LD NTC ret]

DANIEL BEEN                         Kevin P. McVerry, Esq.
      Defendant - Appellee         (See above)
                                    [COR LD NTC ret]

MIKE SEGRIST                        Kevin P. McVerry, Esq.
      Defendant - Appellee         (See above)
                                    [COR LD NTC ret]

SUE WOOD                            Kevin P. McVerry, Esq.

MOATT  INVATT
CLOSED
i

INTERNAL USE ONLY: Proceedings include all events.
99-56919 Silver Sage Partners, et al v. City of Desert Hot S, et al

    Defendant - Appellee        (See above)
                                [COR LD NTC ret]

DOES 1-1000
    Defendant - Appellee

MOATT INVATT
CLOSED
                                                                        i

INTERNAL USE ONLY: Proceedings include all events.
99-56920 Silver Sage Partners, et al v. City of Desert Hot S, et al

SILVER SAGE PARTNERS, LTD.              William J. Davis, Esq.
     Plaintiff - Appellant             FAX 253-9939
                                        (213) 253-5939
                                        Suite 4070
                                        [COR LD NTC ret]
                                        DAVIS & COMPANY, P.C.
                                        333 South Grand Avenue
                                        Los Angeles, CA 90071-1544

ROBERT E. FILLET                        William J. Davis, Esq.
     Plaintiff - Appellant             (See above)
                                        [COR LD NTC ret]

PAUL SABEN                              William J. Davis, Esq.
     Plaintiff - Appellant             (See above)
                                        [COR LD NTC ret]

RICHARD L. EARLIX                       William J. Davis, Esq.
     Plaintiff - Appellant             (See above)
                                        [COR LD NTC ret]

MICHAEL S. LINSK                        William J. Davis, Esq.
     Plaintiff - Appellant             (See above)
                                        [COR LD NTC ret]


     v.

CITY OF DESERT HOT SPRINGS              Kevin P. McVerry, Esq.
     Defendant - Appellee              818/707-1333
                                        [COR LD NTC ret]
                                        GRAVES, ROBERSON & BOURASSA
                                        1200 W. Hillcrest
                                        Suite 100
                                         Thousand Oaks, CA 91320-2734
                                        818/707-1333

DESERT HOT SPRINGS CITY                 Kevin P. McVerry, Esq.
COUNCIL                                 (See above)
     Defendant - Appellee              [COR LD NTC ret]

JOHN ISAACS, Mayor                      Kevin P. McVerry, Esq.
     Defendant - Appellee              (See above)
                                        [COR LD NTC ret]

DANIEL BEEN                             Kevin P. McVerry, Esq.
     Defendant - Appellee              (See above)
                                        [COR LD NTC ret]

MIKE SEGRIST                            Kevin P. McVerry, Esq.
     Defendant - Appellee              (See above)
                                        [COR LD NTC ret]

SUE WOOD                                Kevin P. McVerry, Esq.

Docket as of August 21, 2003 3:00 pm                Page 2    NON-PUBLIC

MOATT  INVATT
CLOSED

i

INTERNAL USE ONLY: Proceedings include all events.
99-56920 Silver Sage Partners, et al v. City of Desert Hot S, et al

        Defendant - Appellee          (See above)
                                       [COR LD NTC ret]

DOES 1-1000
        Defendant - Appellee

Docket as of August 21, 2003 3:00 pm              Page 3    NON-PUBLIC

INTERNAL USE ONLY: Proceedings include all events.
99-56917 Silver Sage Partners, et al v. City of Desert Hot S, et al

11/6/02          Filed order ( Procter R. HUG, Betty B. FLETCHER, Susan Y.
                 Illston, ): Aplt Silver Sage Partners' mtn to amend the
                 mandate in this case to allow the District Court to
                 consider Silver Sage's mtn for prejudgment interest is
                 hereby granted.  [99-56917, 99-56919, 99-56920] (kkw)
                 [99-56917 99-56919 99-56920]

12/20/02         Filed order CONFATT ( AJ) On/before 1/31/03, csl for aplt
                 shall contact the undersigned at (415)556-9906 to report on
                 the status of this matter.  [99-56917, 99-56919, 99-56920]
                 (kkw) [99-56917 99-56919 99-56920]

2/6/03           Filed order CONFATT ( AJ) The application for fees is not
                 selected for inclusion in the Mediation Program. The matter
                 is referred back to the Appellate Commissioner for
                 resolution.  [99-56917, 99-56919, 99-56920] (kkw)
                 [99-56917 99-56919 99-56920]

A TRUE COPY     AUG 21 2003
ATTEST

CATHY CATTERSON
Clerk of Court

by:
        Deputy Clerk

This certification does constitute the
mandate of the court.